**TOWNSEND ENGINEERING COMPANY, Plaintiff-Appellant,**

v.

**HITEC CO., LTD., Defendant-Appellee.**

**No. 87–1141.**

United States Court of Appeals, Federal Circuit.

Sept. 16, 1987.

Donald H. Zarley, Zarley, McKee, Thomte, Voorhees & Sease, Des Moines, Iowa, argued for plaintiff-appellant. With him on brief was Mark D. Hansing.

James D. Jacobs, Rosen, Dainow & Jacobs, New York City, argued for defendant-appellee. With him on brief, was Dennis M. Flaherty.

Before FRIEDMAN, Circuit Judge, BALDWIN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Northern District of Illinois granting summary judgment for the defendant in a patent infringement suit. The court found that there was no infringement, either literal or under the doctrine of equivalents. We affirm.

I

The invention the patent (No. 3,694,853) (the '853 patent) discloses is a sausage-stuffing machine. This case involves the "looper horn" claimed in the '853 patent, which loops stuffed sausages on hooks for further processing.

The appellant Townsend Engineering Company (Townsend) obtained the '853 patent by assignment from its inventor, Charles Austin Greider. Townsend also owned an earlier and now expired U.S. Patent (No. 3,191,222) (the '222 patent), on a sausage-stuffing machine, issued to its chief executive officer, Ray T. Townsend.

Encasing machines made according to the '222 patent had difficulty handling delicate casing material because of the shape of the machines' looper horn. In his specification in the '853 patent, Greider explained that he could avoid the tearing problems encountered in machines manufactured under the '222 patent by changing the shape and geometry of the looper horn:

> The horn extension shown in U.S. Pat. No. 3,191,222 is helical or spiral in shape whereas the horn extension of the present invention is substantially straight and disposed at an angle with respect to the rotational axis of the bearing means (horn base 202) which supports the horn extension.

The application for the '853 patent originally included 27 claims. Claim 27 of the application, which as amended is now claim 5 of the '853 patent, the claim covering the looper horn, is the only claim relevant in this appeal. In pertinent part, claim 27 set forth

> an elongated tube-like horn extension having first and second ends and a longitudinal base [sic: bore] extending therethrough for slidably receiving said casing, said first end of said horn extension being adapted to receive said casing;
>
> bearing means on said support having an axis of rotation and rotatably supporting said first end of said horn extension, the longitudinal axis of said horn extension being substantially straight and forming an angle with respect to said axis of rotation of said bearing means....

In the first Office Action, the patent examiner rejected claim 27 as anticipated by the looper horn of the '222 patent. *See* 35 U.S.C. § 102 (1982). In response, Greider cancelled claim 27 and substituted claim 30, which ultimately became claim 5 of the '853 patent. The most significant differences between claim 30 and claim 27 relate to the shape and length of the looper horn. The relevant portion of claim 30 is reproduced below, with underlining and brackets showing the language added to and deleted from claim 27:

> an elongated tube-like horn extension having first and second *end portions* [ends] and a [longitudinal] bore extending therethrough *and therebetween* for slidably receiving said casing [, said first end of said horn extension being adapted to receive said casing], *said second end portion having a length substantially greater than the length of said first end portion,*
>
> bearing means on said support having an axis of rotation and rotatably supporting said first end *portion* of said horn extension, *said second end portion having a* [the] longitudinal axis [of said horn extension] *which is* [being] substantially straight *and which is angularly disposed* [and forming an angle] *with respect to the longitudinal axis of said first end portion and angularly disposed* with respect to said axes of rotation of said bearing means....

In the remarks explaining the substitution of claim 30 for claim 27, Greider noted that the looper horn of the application differed from that in the '222 patent because the latter was both curved and rotating:

In the specification, [Greider] recognized that looping horns such as the one disclosed in the ['222 patent] have been previously used for looping link casings but it was specifically stated at page 18 of the specification that previous horns have not been adapted to handle delicate casings satisfactorily. The horn extension shown in the ['222] patent is helical or spiral in shape whereas the horn extension of the present invention is substantially straight and disposed at an angle with respect to the rotational axis of the bearing means which supports the horn extension. The result of the device described in claim 30 is that the casings are gently swung back and forth for looping over the hooks of the conveyor. This action is gentler and less likely to cause tearing of the casing than the action obtained from the previous helical horn.

With these changes, claim 30 was issued as claim 5 of the '853 patent.

Townsend filed the present suit against appellee HiTec Co., Ltd. (HiTec), alleging that HiTec's "Auto Wienker" sausage-stuffing machine infringed claim 5 of the '853 patent. The patented and accused looper horns are illustrated below:

Looper Horn
of the '853 Patent

Looper Horn
of the Auto Wienker

HiTec moved for summary judgment of non-infringement, asserting that the Auto Wienker did not infringe either literally or under the doctrine of equivalents. The district court granted the motion and dismissed the complaint. The court ruled that in order to infringe claim 5 literally, HiTec's looper horn had to:

consist of two parts, one part of which is (1) substantially longer than the other part and (2) substantially straight. In addition the horn must be rotated by a bearing means that supports the shorter part of the horn. Finally the longer part of the horn must be set off at an angle from the shorter part.

*Townsend Eng'g Co. v. HiTec Co.*, 1 USPQ2d 1987, 1989 (N.D.Ill.1986). [Available on WESTLAW, DCT database].

The district court noted that unlike the two-part, substantially straight horn claimed in the '853 patent, the Auto Wienk-

er's horn was "a one-piece continuously curved plastic tube...." *Id.* at 1989–90. Because it found that "even a cursory examination of the Auto Wienker horn establishes it does not truly have *any* of those crucial properties of the [looper horn disclosed in the '853 patent]," the court determined that there was no literal infringement. *Id.* at 1989 (emphasis in original).

The court also rejected Townsend's contention that the accused device infringed under the doctrine of equivalents. The court held that Townsend was barred by the doctrine of prosecution history estoppel from reading claim 5 to cover a looper horn like that embodied in the '222 patent:

> [Claim 5 of the '853 patent] was amended after an initial rejection by the patent examiner. That amendment was necessary to distinguish Claim 5 from material already embraced by the ['222] Patent and therefore found to have been anticipated under 35 U.S.C. § 102. Because the looper horn in the ['222] Patent was curved or spiral, Greider was forced to add the limitation that his own looper horn comprises two parts, one of which is longer than and angularly disposed to the shorter part. Indeed, Greider's attorney emphasized the newly narrowed description of the looper horn in the argument that accompanied amended Claim 5.
>
> In light of that prosecution history, Townsend is estopped from using the doctrine of equivalents to avoid the specific words of limitation Greider chose to add to Claim 5 to obtain issuance of his patent....
>
> Accordingly Townsend cannot argue the curved single-piece Auto Wienker looper horn (an embodiment abandoned in Claim 5 as amended) is the functional equivalent of the substantially straight two-piece Greider looper horn....

*Id.* at 1990–91 (footnote and citations omitted).

## II

Although infringement, either literal or under the doctrine of equivalents, is a question of fact, *see Graver Tank & Mfg. Co. v.*

*Linde Air Prods. Co.,* 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 85 USPQ 328, 331 (1950), " '[s]ummary judgment is as appropriate in a patent case as in any other' where no genuine issue of material fact is present and the movant is entitled to judgment as a matter of law." *Brenner v. United States,* 773 F.2d 306, 307, 227 USPQ 159, 160 (Fed.Cir.1985) (quoting *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835, 221 USPQ 561, 564 (Fed.Cir.1984)). Thus, the granting of summary judgment will be upheld "where the claims do not 'read on' the accused structure" to establish literal infringement "and a prosecution history estoppel makes clear that no actual infringement under the doctrine of equivalents can be found." *Id.; Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.,* 757 F.2d 255, 225 USPQ 240 (Fed.Cir.1985).

Townsend contends that there are disputed issues of material fact relating to both literal infringement and infringement by equivalents that precluded the grant of summary judgment, and that in any event the district court erred in holding that the doctrine of prosecution history estoppel bars Townsend from invoking the doctrine of equivalents. To establish the existence of disputed issues of material fact, Townsend relies mainly upon the affidavit of its chief executive officer, Mr. Townsend, which it asserts established the existence of nine disputed issues of material fact. Townsend further asserts that in granting summary judgment the district court ignored the Townsend affidavit and improperly resolved factual issues that could be determined only after a trial.

We have concluded, however, that the district court correctly held that there are no disputed issues of material fact and that on the undisputed facts HiTec was entitled to judgment as a matter of law. The Townsend affidavit largely consists of Mr. Townsend's opinion about the meaning and application of various phrases and provisions of claim 5, and does not create factual disputes that precluded the grant of summary judgment. *See Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d

158, 163–64, 225 USPQ 34, 37–38 (Fed.Cir. 1985) ("mere allegations by declaration or otherwise do not raise issues of fact needed to defeat a motion for summary judgment"); *see also D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1150–51, 219 USPQ 13, 17–18 (Fed.Cir.1983), *cert. denied,* 474 U.S. 825, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985) (affidavit which fails to raise specific issues of material fact insufficient to preclude grant of summary judgment).

■ A. *Literal Infringement.* The district court correctly determined that there were no genuine issues of material fact regarding literal infringement by the accused device. "Literal infringement requires that the accused device embody every element of the claim." *Builders Concrete,* 757 F.2d at 257, 225 USPQ at 241. Claim 5 of the '853 patent is drawn to a two-part horn, and literally requires that (1) one part of the horn must be substantially longer than the other part, and (2) that this longer portion must be substantially straight. In addition, the horn must be rotatable by a bearing means that supports the shorter part of the horn. Furthermore, the longer part of the horn must "be angularly disposed with respect to" the shorter part of the horn.

The district court correctly determined that the accused device differs markedly from the horn claimed in the '853 patent. *See Townsend Eng'g,* 1 USPQ2d at 1989–90. Unlike the two-part device claimed in the '853 patent, the accused device consists of a single piece of plastic tubing. While the patented device rotates, the accused device oscillates between two points. Furthermore, although the patented device has two portions, one of which is "substantially straight," the accused device consists of a single piece that is continuously curved along its entire length.

Because the accused device does not embody every element of claim 5 of the '853 patent, the district court correctly granted HiTec's motion for summary judgment on the literal infringement issue.

B. *Doctrine of Equivalents.* The district court also correctly determined that

there were no genuine issues of material fact regarding infringement under the doctrine of equivalents. Under that doctrine, an accused product that does not literally infringe a structural claim may infringe "if it performs substantially the same function in substantially the same way to obtain the same result." *Graver Tank,* 339 U.S. at 608, 70 S.Ct. at 856, 85 USPQ at 330 (quoting *Sanitary Refrigerator Co. v. Winters,* 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929)); *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1361, 219 USPQ 473, 480 (Fed.Cir.1983).

■ The doctrine of equivalents, however, is limited by prosecution history estoppel, which "limits a patentee's reliance on the doctrine of equivalents by preventing him from contending later in an infringement action that his claims should be interpreted as if limitations added by amendment were not present...." *Thomas & Betts Corp. v. Litton Sys., Inc.,* 720 F.2d 1572, 1579, 220 USPQ 1, 6 (Fed.Cir. 1983).

■ Prosecution history estoppel applies both "to claim amendments to overcome rejections based on prior art, and to arguments submitted to obtain the patent." *Hughes Aircraft,* 717 F.2d at 1362, 219 USPQ at 481 (citations omitted). When claim 5 of the accused device was originally submitted, the patent examiner rejected it as having been anticipated by the '222 patent. Because the '222 patent disclosed a one-part spiral or helical looper horn, the patentee added the limitations that its own horn consists of two "portions," one of which is "substantially straight" and which has a length "substantially greater" than the other portion. The patentee also added the limitation that the second end portion of its horn is angularly disposed to the first end portion.

In the remarks explaining the substitution of claim 30 for claim 27, the patentee emphasized the difference in length between the first and second end portions of the looper horn:

The claim describes that the second end portion has a length substantially great-

er than the length of the first end portion.

The patentee also pointed out that the second end portion of the looper horn was substantially straight:

> The horn extension shown in the ['222] patent is helical or spiral in shape whereas the horn extension of the present invention is substantially straight....

■ Contrary to Townsend's contention, these amendments were not limited to avoiding the " 'helical or spiral' nature" of the horn of the '222 patent, but imposed broader limitations upon the claim.

Having added limitations to avoid the device disclosed in the prior art, Townsend is barred by prosecution history estoppel from interpreting his claim as broadly as the claim originally filed. The accused device, like the prior art embodied in the '222 patent, is a one-piece looper horn that curves over its entire length. Townsend amended its claim to make clear that its looper horn (1) had first and second end portions, (2) that the second end portion was substantially longer than the first end portion, (3) that the second end portion was substantially straight, and (4) that the second end portion was angularly disposed with respect to the first end portion. Townsend is now precluded from contending that the accused device—which has none of the characteristics added by the amendments—is equivalent to the invention claimed in the '853 patent.

For this reason the district court cannot be faulted, as Townsend would do, for failing to make the three-part analysis that defines the doctrine of equivalents. *See supra* p. 9.

C. Townsend makes a number of creative, but unpersuasive, arguments in support of its contention that there were factual issues that precluded summary judgment on the prosecution history estoppel issue.

First, Townsend asserts that the HiTec horn, like the horn disclosed in the '853 patent, consists of two pieces. Townsend argues that it is theoretically possible to divide the HiTec horn into two "portions" based on the horn's inner diameter.

As the district court recognized, however, Townsend's attempt to divide the HiTec looper horn into two portions based on the horn's inner diameter ignores the basic structure of the HiTec horn. *Townsend Eng'g,* 1 USPQ2d at 1990. The district court, after viewing the HiTec horn, correctly determined that

> [e]ven if this Court buys Townsend's statements that one section of the HiTec horn gradually becomes wider while a longer portion is consistently of the same diameter, that does not alter the nature of the Auto Wienker as a single piece of plastic tubing.

*Id.* (footnotes omitted).

Townsend further asserts that the accused device, like the device claimed in claim 5 of the '853 patent, contains a "second portion" that is "substantially straight." In support of this contention, Townsend presents a number of illustrations of the accused and the patented devices viewed from above. As the district court correctly noted, however, "even a Hula-Hoop is 'substantially straight' when viewed from a point in its own plane." *Id.* at 1990 n. 5. The district court properly refused to adopt this artificial interpretation of the structure of the two devices.

Even assuming *arguendo* that the HiTec horn could be divided into two portions, and that a small portion of the horn could be viewed as "substantially straight," Townsend's argument still is fatally flawed. Even under Townsend's analysis, the "substantially straight portion" of the HiTec horn does not have a length substantially longer than the horn's other portion. Moreover, even if the HiTec horn were viewed as consisting of two portions, those portions are not "angularly disposed" but instead meet to form a continuous curve.

Contrary to Townsend's assertions, therefore, the accused device does not contain the limitations that were added to the patented device to avoid the prior art. The district court properly determined that there were no genuine issues of material fact regarding infringement under the doc-

trine of equivalents, and that HiTec was entitled to judgment on the equivalents issue as a matter of law.

## CONCLUSION

The judgment of the district court granting HiTec's motion for summary judgment and dismissing the suit is affirmed.

AFFIRMED.